**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **EYITAYO ARAROMI,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-13-CV-201** |
| | § | **EP-09-CR-3143-KC-1** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent**. | § | |

**ORDER**

On this day, the Court considered Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion"),[1] ECF No. 568.[2]

By the Motion, Petitioner challenges his sentence on the ground that he received ineffective

assistance of counsel. For the following reasons, the Court **DENIES** the Motion.

**I.      BACKGROUND**

**A.      Indictment and Plea Agreement**

On November 24, 2009, a grand jury charged Petitioner, along with several co-

defendants, in a two-count indictment (the "Indictment"), ECF No. 1, with conspiracy to possess

cocaine and ecstasy with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1),

(b)(1)(B)(ii), and (b)(1)(C). *See* Indictment 1-3. Although the Court initially appointed an

attorney to represent Petitioner, *see* ECF No. 83, Petitioner later retained a different attorney

("Trial Counsel") in the Case. *See* ECF Nos. 96, 97.

---

[1] The Court refers to the pagination assigned to the Motion by the Court's electronic docketing system, rather than to the internal pagination assigned by Petitioner.

[2] For the purposes of this Order, all docket entries refer to the criminal case EP-09-CR-3143-KC (the "Case").

On January 8, 2010, the Government filed a notice of enhanced penalty (the "Notice of Enhanced Penalty"), ECF No. 172. The Government thereby sought an enhanced sentence on the basis of Petitioner's two prior drug possession convictions. *See id*. at 1-2.

Petitioner, Trial Counsel, and the Assistant United States Attorney assigned to the Case then signed a plea agreement (the "Plea Agreement"), ECF No. 203, at 5. Petitioner thereby agreed to plead guilty to Count One of the Indictment, which charged Petitioner with conspiracy to possess cocaine with intent to distribute. *See id*. at 1. In exchange, the Government did not pursue Count Two, which charged Petitioner with conspiracy to possess ecstasy with intent to distribute. *See* Sentencing Hr'g Tr., Dec. 20, 2010, ECF No. 508, at 56.

The Plea Agreement contains several provisions relevant to the disposition of the Motion. First, the Plea Agreement contains a provision entitled "<u>RANGE OF PUNISHMENT</u>" that provides:

> [Petitioner] understands that as a result of the [Notice of Enhanced Penalty], the range of punishment for [Petitioner]'s offense is a term of imprisonment of not less than ten (10) years or more than life, a fine not to exceed $4,000,000, a term of supervised release of at least eight (8) years, and a $100 special assessment.

Plea Agreement 1.

The Plea Agreement also contains a waiver of Petitioner's right to appeal his sentence (the "Appeal Waiver"), which is reproduced in relevant part as follows:

> By entering into th[e] [P]lea [A]greement, and as a term of th[e] [P]lea [A]greement, [Petitioner] voluntarily and knowingly waives any right to appeal the sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742, as amended by [*United States v. Booker*, 543 U.S. 220 (2005)] . . . . Realizing the uncertainty in estimating what sentence [Petitioner] will ultimately receive, [Petitioner] knowingly and voluntarily waives any rights to appeal the sentence or contest it in any post-conviction proceeding in exchange for the concessions made by the Government in th[e] [P]lea [A]greement.

*Id*. at 3.

### B.      Plea Hearing

The Court held a plea hearing on February 23, 2010 (the "Plea Hearing"),[3] at which Petitioner pleaded guilty to Count One of the Indictment. *See* Plea Hr'g Tr., Feb. 23, 2010, ECF No. 507, at 34. Petitioner, prior to pleading guilty, affirmed in a colloquy with the Court that he was pleading guilty "freely and voluntarily," and that he was fully satisfied with Trial Counsel's representation. *See id*. at 6-8. Petitioner further affirmed that he had a chance to review and discuss the Plea Agreement with Trial Counsel before signing it. *See id*. at 10.

Petitioner also affirmed that he understood that, as a result of the Notice of Enhanced Penalty, he could be sentenced to incarceration of not less than ten years or more than life, among other punishments.[4] *See id*. at 17. Petitioner nonetheless admitted to the two prior drug convictions listed in the Notice of Enhanced Penalty. *See id*. at 38-39.

The Court also admonished Petitioner as follows regarding the Appeal Waiver:

> In your case, Mr. Araromi, you do have a plea agreement. By entering into that plea agreement, you have limited your right to appeal. That doesn't mean you can't appeal. But it means you have a limited right to appeal. You could still appeal for ineffective assistance of counsel. You could appeal if there were some sort of prosecutorial misconduct that rises to a Constitutional violation. But you have a limited right to appeal. Do you understand that?

*Id*. at 23-24.

However, the transcript reflects that Petitioner did not answer this question; instead, the transcript reflects that another defendant in an unrelated case who was pleading guilty at the same hearing, Ygnacio Luis Aldama-Blanchard ("Aldama"), answered "Yes, Your Honor." *See*

---

[3] Petitioner accurately refers to the Plea Hearing as the "Rule 11 Hearing" throughout the Motion, because pleas are governed by Federal Rule of Criminal Procedure 11. *See* Mot. 25-30. For the sake of consistency, however, the Court uses the term "Plea Hearing" throughout this Order.

[4] As the Court describes in a subsequent section of this Order, the Court advised Petitioner of the maximum sentence he faced on two occasions during the Plea Hearing. *See* Plea Hr'g Tr. 17, 25. On the latter of these occasions, the Court misspoke and stated the incorrect statutory maximum and minimum. *See id*. at 25. The Court assesses the effect of this error below.

*id*. at 24.

After this colloquy, the Assistant United States Attorney summarized the factual basis to which Petitioner would plead guilty. *See id*. at 28-31. Petitioner affirmed that, subject to certain clarifications by Trial Counsel that are not relevant to the disposition of the Motion, the information in the factual basis was "true and correct." *See id*. at 33. Petitioner then pleaded guilty, and the Court accepted his plea. *See id*. at 34, 37-38.

### C.    Presentence Investigation Report

Following the Plea Hearing, a United States Probation Officer prepared an initial presentence investigation report. *See* ECF No. 408. Trial Counsel raised several written objections to the initial report. *See* ECF No. 408-3. The probation officer thereafter filed a revised presentence investigation report (the "PSR"), ECF No. 474,[5] that was "revised to reflect" certain "revisions and omissions" that the officer listed in an attached document. *See* ECF No. 474-1 (describing differences between the initial presentence investigation report and the PSR).

### D.    Sentencing Hearing

The Court held a sentencing hearing in the Case on December 20, 2010 (the "Sentencing Hearing"). *See* Sentencing Hr'g Tr. The Court sentenced Petitioner in accordance with the 18:1 crack-to-powder cocaine ratio embodied in the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (codified in scattered sections of 21 U.S.C. and 28 U.S.C.) (the "FSA"). The Court also enhanced Petitioner's sentence on the basis of (1) a firearm Petitioner possessed during the course of the conspiracy and (2) the prior convictions listed in the Notice of Enhanced Penalty. *See* Sentencing Hr'g Tr. 54-55. The Court accordingly sentenced Petitioner to 292

---

[5] The Court refers to the pagination assigned to the PSR by the Court's electronic docketing system, rather than the internal pagination assigned by the United States Probation Office.

months of incarceration and eight years of supervised release. *See id*. at 55. The Court also imposed a $5,000 fine and a $100 special assessment. *See id*. at 55-56.

### E.    Appeal

On December 28, 2010, Trial Counsel filed a notice of appeal on Petitioner's behalf. *See* ECF No. 493. On the same day, Trial Counsel filed a motion to withdraw as Petitioner's attorney of record. *See* ECF No. 494. The Court granted Trial Counsel's motion to withdraw on January 1, 2011. Petitioner then retained another attorney ("Appellate Counsel") to represent him on appeal. *See* ECF No. 504.

Petitioner, with Appellate Counsel's assistance, appealed his conviction to the United States Court of Appeals for the Fifth Circuit, where he raised several challenges. *See United States v. Araromi*, 477 F. App'x 157 (5th Cir. 2012). Petitioner first argued that his guilty plea was neither knowing nor voluntary because this Court failed to comply fully with Federal Rule of Criminal Procedure 11(b)(1) at the Plea Hearing. *See id*. at 158. The Fifth Circuit rejected Petitioner's argument because he failed to demonstrate that he "would not have pleaded guilty but for [this Court's] errors." *Id*.

Petitioner then argued that the factual basis was insufficient to support his guilty plea. *See id*. The Fifth Circuit, citing "ample evidence that the conspiracy involved 500 grams or more of . . . cocaine," concluded that "the factual basis was . . . sufficient to support the district court's acceptance of [Petitioner]'s guilty plea." *Id*. at 158-59.

Petitioner also argued that "the [P]lea [A]greement was void for lack of consideration because the Government surrendered no rights in exchange for his wholesale capitulation." *See id*. at 159. The Fifth Circuit rejected this argument on several grounds. First, the Fifth Circuit ruled that, because the Fifth Circuit had "never expressly held that consideration is required to

support a valid plea bargain," Petitioner could not establish "that the district court plainly erred in accepting his plea agreement," even if the Plea Agreement "lacked a bargained for quid pro quo." *See id.* (citing *United States v. Smallwood*, 920 F.2d 1231, 1239-40 (5th Cir. 1991); *Smith v. Estelle*, 562 F.2d 1006, 1008 (5th Cir. 1977)). Secondly, the Fifth Circuit concluded that the Plea Agreement was in fact supported by consideration, because the Government agreed to, and Petitioner received, a three-level reduction pursuant to U.S.S.G. § 3E1.1. *See id.*

Petitioner also challenged the length of his sentence on various grounds. *See id.* at 159-60. The Fifth Circuit refused to consider these arguments because Petitioner "knowingly and voluntarily waived his right to appeal his sentence on any ground" by agreeing to the Appeal Waiver. *Id.* at 160.

The Fifth Circuit accordingly affirmed this Court's judgment in all respects. *See id.* Appellate Counsel did not file a writ of certiorari with the United States Supreme Court.

### F.      Post-Appeal Filings

On December 29, 2011, Petitioner moved to retroactively modify his sentence to receive the benefit of the more lenient punishments for crack cocaine offenses enacted by the FSA and the analogous changes to the Sentencing Guidelines. *See* ECF No. 535. The Court denied this motion on January 24, 2012 on the ground that Petitioner had already "received the benefit of those amendments in his original sentence and [wa]s not entitled to further relief." *See* ECF No. 541.

Petitioner filed the Motion on June 21, 2013, after the Fifth Circuit denied his appeal. *See* Mot. The Government responded to the Motion on September 4, 2013. *See* Resp., ECF No. 573.

Petitioner filed a reply on September 19, 2013. *See* Reply, ECF No. 575.[6]

## II.    DISCUSSION

### A.    Standard

28 U.S.C. § 2255 provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

After a petitioner has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)). Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)). Typically, before a court will grant relief pursuant to § 2255, the petitioner must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

---

[6] In contrast to the Motion and the PSR, the Court refers to the internal pagination assigned to the Reply by Petitioner rather than to the pagination assigned by the Court's electronic docketing system.

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a petitioner must either: (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). The cause and actual prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal." *Gaudet*, 81 F.3d at 589. If the petitioner does not meet either burden, then he is procedurally barred from attacking his conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992). This procedural bar does not apply, however, to claims alleging ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 508 (2003).

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions. U.S. Const. amend. VI. Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To obtain relief on an ineffective assistance of counsel claim, a petitioner must demonstrate both (1) that his "counsel's performance was deficient[,]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of this test requires a court to find that counsel's performance was effective. *See*

8

*Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

The test's performance prong centers on whether counsel's assistance was reasonable in light of all the circumstances at the time of counsel's conduct. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). In order to obtain relief, a petitioner must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In assessing whether a particular attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A deficiency in counsel's performance, even if professionally unreasonable, does not necessarily equal ineffective assistance of counsel; the petitioner must also demonstrate actual prejudice. *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."). The test's prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's

9

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Because Petitioner appears pro se, the Motion is "entitled to a liberal construction that includes all reasonable inferences which can be drawn from" it. *United States v. Peralta-Ramirez*, Criminal No. H-04-0150-06, Civil Action No. H-07-4582, 2008 WL 4630369, at *2 (S.D. Tex. Oct. 16, 2008) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997)). However, even a pro se litigant must provide sufficient facts in support of his or her claims; "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *accord Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### B.    Analysis

Petitioner argues that he is entitled to relief under 28 U.S.C. § 2255 because both Trial Counsel and Appellate Counsel rendered ineffective assistance in numerous respects throughout various stages of the Case. *See* Mot. 18-49. The Court first considers Petitioner's contentions regarding Trial Counsel's representation.

### 1.    Whether Trial Counsel rendered ineffective assistance

Petitioner argues that Trial Counsel rendered ineffective assistance in multiple respects during the plea process, at the Plea Hearing, and at the Sentencing Hearing. *See id.* at 18-44. The Court addresses each phase of the Case separately.

### a.    The plea process

Petitioner alleges that Trial Counsel rendered ineffective assistance during the plea process by (1) failing to advise Petitioner that the Plea Agreement lacked consideration, and (2)

10

failing to fully inform Petitioner that the Appeal Waiver would bar many of the challenges he ultimately raised on appeal. *See id*. at 18-25. For the following reasons, both of these challenges fail.

><blockquote>

**i.      Trial Counsel's alleged failure to advise Petitioner that the Plea Agreement lacked consideration**

Petitioner argues that Trial Counsel rendered ineffective assistance by "failing to advise [Petitioner] that the Government had overreached because the Plea Agreement lacks consideration." *See id*. at 18-22. Petitioner contends that if Trial Counsel "timely discovered that the [P]lea [A]greement lacked consideration," he

> could have either (1) went back to the government and negotiated an agreement that didn't lack consideration; or (2) used this as grounds for withdrawing [Petitioner]'s plea of guilty. In other words, [Trial C]ounsel's omissions resulted in the lost opportunity to either negotiate a better plea agreement or move to withdraw the plea on lack of consideration grounds. Therefore, [Petitioner] was actually prejudiced as a result of [Trial C]ounsel's unprofessional errors.

*Id*. at 22.

Petitioner's argument fails because the Fifth Circuit already rejected this argument. The Fifth Circuit ruled that the Plea Agreement was supported by consideration because the Government did indeed bind itself "to do something it was not otherwise required to do," namely, to allow Petitioner to receive a three-level reduction under U.S.S.G. § 3E1.1. *See Araromi*, 477 F. App'x at 159. This Court has no power to reconsider the Fifth Circuit's ruling on this issue. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions.") (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)).

Petitioner responds that the issue the Fifth Circuit considered is not precisely the same

issue as the one he raises in the Motion: whereas the Fifth Circuit directly considered whether the

Plea Agreement was void for lack of consideration, the question here is whether Trial Counsel

rendered ineffective assistance for failing to object to the Plea Agreement. *See* Reply 2-3.

Petitioner may be correct, but that does not change the result. Because the Plea Agreement was

indeed supported by consideration, Trial Counsel could not have successfully argued to the

Government or to this Court that the Plea Agreement was void. "Failure to raise meritless

objections is not ineffective lawyering; it is the very opposite." *See Clark v. Collins*, 19 F.3d 959,

966 (5th Cir. 1994). Thus, Trial Counsel did not fail to advise Petitioner of any defects in the

Plea Agreement, so Trial Counsel's performance in that respect was neither deficient nor

prejudicial. *See Strickland*, 466 U.S. at 687.

### ii.   Trial Counsel's alleged failure to explain the consequences of the Appeal Waiver to Petitioner

Petitioner alleges that although Trial Counsel

> communicated the *fact* of an appeal waiver being contained in the [P]lea
> [A]greement, he did not *inform* [Petitioner] of the 'terms' of the [A]ppeal
> [W]aiver, discuss the consequences of signing an agreement that contained an
> appeal waiver, or explain what issues/appellate rights [Petitioner] would be
> forfeiting by signing the [P]lea [A]greement.

Mot. 22 (emphasis in original).

Petitioner further alleges that Trial Counsel erroneously informed him that the Appeal Waiver

"would have absolutely no effect on [his] ability to appeal the sentence[.]" *Id*. at 58-59. He also

claims that Trial Counsel never allowed him to read the Plea Agreement, including the Appeal

Waiver, before he signed it. *See id*. at 59.

The Fifth Circuit ruled that the Appeal Waiver barred many of Petitioner's direct

challenges to his sentence. *See Araromi*, 477 F. App'x at 159-60. Petitioner therefore argues that

if Trial Counsel had explained the consequences of the Appeal Waiver, including

how the [A]ppeal [W]aiver would affect his direct appeal and his ability to challenge the sentence[,] he would have rejected the government's offer and either (a) requested that the [A]ppeal [W]aiver be stricken from the [P]lea [A]greement, or (b) moved to proceed to trial in the event that the government refused to strike the [A]ppeal [W]aiver from the [P]lea [A]greement. And, had the government agreed to remove the [A]ppeal [W]aiver from the [P]lea [A]greement, the result of the proceeding would have been more favorable to [Petitioner]. Thus, [Petitioner] was actually prejudiced as a result of [Trial C]ounsel's deficient performance in failing to discuss the 'terms' of the [A]ppeal [W]aiver and dangers it would have on his case.[7]

Mot. 24.

Petitioner therefore claims that he is entitled to relief under 28 U.S.C. § 2255 due to Trial Counsel's ineffective assistance. *See id*. at 22-24.

"A defendant may waive his statutory right to appeal his [or her] sentence if the waiver is knowing and voluntary." *See United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (citations omitted). A petitioner's ineffective assistance claim based on his or her attorney's failure to explain the terms of an appeal waiver will fail where, notwithstanding counsel's allegedly defective advice, the petitioner fully understood the appeal waiver's effect at the time he or she pleaded guilty. *See Barela-Laso v. United States*, Nos. A–12–CV–136 LY, A–10–CR–320 LY, 2012 WL 3929347, at *5 (W.D. Tex. Sept. 6, 2012); *United States v. Vaughn*, CR. No. C-06-170, C.A. No. C-07-451, 2008 WL 2966017, at *2-3, *5 (S.D. Tex. July 31, 2008). To that end, Federal Rule of Criminal Procedure 11(b)(1)(N) requires the district court to admonish the defendant regarding the terms of the appeal waiver, and determine that the defendant understands those terms, before accepting the defendant's guilty plea. *See* Fed. R. Crim. P. 11(b)(1). "If the district court accurately explains the terms and consequences of the waiver of appeal and the

---

[7] Petitioner also argues that Trial Counsel "was ineffective in failing to advise [Petitioner] what constitutional/statutory rights he would be forfeiting and what issues would be non-appealable as a result of signing the Plea Agreement," and places this argument in a separate subsection in the Motion. *See* Mot. 24-25. However, the issues Petitioner raises in that subsection are the same as the issues the Court addresses here: whether Trial Counsel rendered ineffective assistance by failing to explain the effect of the Appeal Waiver to Petitioner. *See id*. The Court accordingly considers both of Petitioner's challenges on this score in a single section of this Order.

defendant states on the record that he understands them," then the defendant is barred from asserting in a later proceeding "that he did not really understand" how the appeal waiver would operate. *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011) (citing *United States v. Smith*, 404 F. App'x 884, 886-87 (5th Cir. 2010); *United States v. De Cay*, 359 F. App'x 514, 515-16 (5th Cir. 2010)).

Notwithstanding Rule 11(b)(1)(N), an appeal waiver can be enforceable even where the district court fails to specifically admonish the defendant regarding its effect. An "explicit, unambiguous waiver of appeal" remains valid "regardless of whether the district court addressed it directly" at the defendant's plea hearing "where the record indicates that the defendant has read and understood his plea agreement and has raised no questions about the waiver." *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *United States v. Higgins*, 739 F.3d 733, 736-37 (5th Cir. 2014) (citations omitted).[8]

However, an appeal waiver is *invalid* if the court *neither* specifically admonishes the defendant regarding the plea waiver *nor* confirms that the defendant has read and understood the plea agreement. *See United States v. Robinson*, 187 F.3d 516, 517-18 (5th Cir. 1999) ("It is clear from the plea colloquy that the district court did not ask [the defendant] whether he had read the written plea agreement and understood it. More importantly, the district court did not warn [the defendant] that he was waiving his right to appeal."). *Accord United States v. Hoot*, 86 F. App'x

---

[8] *Accord United States v. Alvarado-Casas*, 715 F.3d 945, 955 (5th Cir. 2013) ("At the rearraignment hearing, the district court did not specifically focus Alvarado–Casas on, or determine that he understood, the appeal waiver provision. The court did, however, confirm at both rearraignment and sentencing that Alvarado–Casas reviewed the plea agreement with counsel, understood its terms, and signed it voluntarily. That is sufficient."); *United States v. Wheaten*, 465 F. App'x 321, 323 (5th Cir. 2012); *United States v. Narvaez*, 452 F. App'x 488, 492-93 (5th Cir. 2011); *United States v. Stanson*, 444 F. App'x 11, 12-13 (5th Cir. 2011); *United States v. Arizpe-Duque*, 391 F. App'x 380, 381 (5th Cir. 2010); *United States v. Stephens*, 302 F. App'x 278, 279 (5th Cir. 2008); *United States v. Hopkins*, 196 F. App'x 309, 310 (5th Cir. 2006); *United States v. Jaramillo*, 174 F. App'x 204, 205 (5th Cir. 2006); *United States v. Armendariz*, 138 F. App'x 686, 687 (5th Cir. 2005); *United States v. Tucker*, 136 F. App'x 700 (5th Cir. 2005); *United States v. Tatum*, 110 F. App'x 414, 415 (5th Cir. 2004); *United States v. Isais*, 251 F.3d 157 (5th Cir. 2001); *United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994).

16, 16 (5th Cir. 2004).[9] Similarly, an appeal waiver is ineffective where the defendant expresses confusion regarding the appeal waiver's consequences at the plea hearing, asks the court to explain the appeal waiver's terms, and does not receive a satisfactory explanation before pleading guilty. *See United States v. Baty*, 980 F.2d 977, 978-79 (5th Cir. 1992).

In sum, when the district court does not directly ask and determine whether the defendant understands his or her appeal waiver, the waiver remains valid if (1) the defendant affirms that he or she has read and understood the plea agreement; (2) the defendant does not ask questions in open court that evince a lack of understanding of the appeal waiver or other terms of the plea agreement; and (3) the written terms of the appeal waiver are clear and unambiguous. *See Higgins*, 739 F.3d at 736-37; *McKinney*, 406 F.3d at 746; *United States v. Fuller*, 46 F. App'x 732 (5th Cir. 2002); *Portillo*, 18 F.3d at 292-93; *Baty*, 980 F.2d at 978-79.

This Court, before accepting Petitioner's guilty plea, advised Petitioner as follows:

> In your case, Mr. Araromi, you do have a plea agreement. By entering into that plea agreement, you have limited your right to appeal. That doesn't mean you can't appeal. But it means you have a limited right to appeal. You could still appeal for ineffective assistance of counsel. You could appeal if there were some sort of prosecutorial misconduct that rises to a Constitutional violation. But you have a limited right to appeal. Do you understand that?

Plea Hr'g Tr. 23-24.

The transcript reflects that Aldama, rather than Petitioner, answered "Yes, Your Honor" to the

---

[9] *See also United States v. Thompson*, 358 F. App'x 527, 528 (5th Cir. 2009); *United States v. Cardenas*, 135 F. App'x 688, 689-90 (5th Cir. 2005) (holding that the "waiver-of-appeal provision" in a defendant's plea agreement "d[id] not deprive [the appellate court] of jurisdiction to address the merits of [the defendant's] appeal" where "the magistrate judge who took [the defendant's] plea did not call specific attention to th[e] provision"); *United States v. Merrill*, 128 F. App'x 393, 394 (5th Cir. 2005) (same); *United States v. Rodriguez*, 98 F. App'x 355, 356 (5th Cir. 2004) ("Because Rodriguez's appeal waiver was not mentioned during his rearraignment by either the magistrate judge or the Government, Fed. R. Civ. P. 11(b)(1)(N) was not satisfied and the waiver cannot be held to have been knowing and voluntary."); *United States v. Nelson*, 78 F. App'x 396, 397 (5th Cir. 2003); *United States v. Trevino*, 31 F. App'x 155 (5th Cir. 2001); *United States v. Maldonado-Ramirez*, 273 F.3d 1102 (5th Cir. 2001); *United States v. Brown*, 260 F.3d 622 (5th Cir. 2001).

Court's admonition.[10] *See id.* at 24. Nonetheless, for the following reasons, Petitioner knowingly and voluntarily pleaded guilty with full knowledge of the Appeal Waiver's terms, even if this Court did not directly determine whether Petitioner understood the Appeal Waiver.

First, "the record indicates that [Petitioner] read and understood his plea agreement." *See Higgins*, 739 F.3d at 737. At the Plea Hearing, Petitioner affirmed to the Court that he read the Plea Agreement and reviewed it with Trial Counsel.[11] *See* Plea Hr'g Tr. 10. Petitioner repeatedly affirmed to the Court that he understood the sorts of rights he was waiving as a result of entering the Plea Agreement, as well as the penalties he would receive as a result of pleading guilty. *See id.* at 11-24.

Second, Petitioner "raised no questions about the waiver." *See Higgins*, 739 F.3d at 737.

---

[10] The Court is confident that the attribution to Aldama in the Plea Hearing Transcript is erroneous for several reasons. First, in addition to Petitioner, two other defendants in unrelated cases pleaded guilty at the Plea Hearing. *See* Plea Hr'g Tr. 2-3. Aldama and the third defendant were assisted by the Official Court Interpreter; Petitioner was not. *See id.* at 3. If Aldama answered the Court's admonition instead of Petitioner, the Official Court Interpreter would have translated his response. Because Petitioner was the only defendant at the Plea Hearing not assisted by an interpreter, the Official Court Interpreter's translation would have alerted the Court that the wrong defendant had answered the admonition. The Court would not have proceeded if Petitioner, to whom the admonition was explicitly addressed, had not responded.

Moreover, unlike Petitioner, Aldama was not pleading guilty pursuant to a plea agreement. *See id.* at 23. Directly before admonishing Petitioner regarding the appeal waiver, the Court advised Aldama that because he did "not have a plea agreement," he had "the right to appeal on any ground with respect to the sentencing in [his] case." *Id.* Aldama affirmed that he understood. *See id.* It is therefore especially unlikely that Aldama responded to a question directed to Petitioner by name regarding an appeal waiver in a plea agreement less than a minute after he had already affirmed to the Court that he was *not* pleading guilty pursuant to a plea agreement, and retained the right to appeal his case on any ground. *See id.* at 23-24.

The Court also observes that the transcripts in the Case contain several other obvious misattributions. The Sentencing Hearing Transcript, for example, attributes to Petitioner several statements made by the courtroom deputy. *See* Sentencing Hr'g Tr. 2 ("DEFENDANT E. ARAROMI: EP:09-CR-3143, USA versus Eyitayo Araromi and Olaniyi Araromi."); *id.* at 39 ("DEFENDANT E. ARAROMI: Court is back in session."). This makes it all the more likely that the Plea Hearing Transcript erroneously attributes Petitioner's response to Aldama.

Nevertheless, as the Court explains below, even assuming that Aldama answered the admonition, Petitioner's ineffective assistance argument fails.

[11] The Court, in a subsequent section of this Order, rejects Petitioner's argument that he never read the Plea Agreement.

At no point did Petitioner ask the Court any questions about his Plea Agreement or the Appeal Waiver, or indicate any confusion regarding the Plea Agreement's terms. *See* Plea Hr'g Tr. 2-39. *Cf. Baty*, 980 F.2d at 978-79 (invalidating appeal waiver where defendant asked questions about the appeal waiver at the plea hearing and did not receive a satisfactory response).

Third, the Appeal Waiver is "explicit" and "unambiguous." *See McKinney*, 406 F.3d at 746. The Appeal Waiver clearly states that Petitioner "knowingly waives any right to appeal the sentence on any ground." Plea Agreement 3. The Appeal Waiver further states: "Realizing the uncertainty in estimating what sentence [Petitioner] will ultimately receive, [Petitioner] knowingly and voluntarily waives any right to appeal the sentence . . . in exchange for the concessions made by the Government in th[e] [P]lea [A]greement." *Id*. Thus, the Plea Agreement, on its face, explained the Appeal Waiver's effect to Petitioner.

Because these three prerequisites are met, Petitioner knowingly and voluntarily agreed to the Appeal Waiver. *See Higgins*, 739 F.3d at 736-37; *McKinney*, 406 F.3d at 746; *Fuller*, 46 F. App'x 732; *Portillo*, 18 F.3d at 292-93; *Baty*, 980 F.2d at 978-79.

The Court notes an additional reason to conclude that Petitioner knowingly and voluntarily waived his right to appeal: When Petitioner appealed his sentence, the Fifth Circuit held that his "sentencing arguments" were "barred by" the Appeal Waiver because "[t]he record reflects that [Petitioner] knowingly and voluntarily waived his right to appeal his sentence on any ground." *Araromi*, 477 F. App'x at 160. The Fifth Circuit reached this conclusion even though it noted that this Court may not have complied fully with Federal Rule of Criminal Procedure 11 at the Plea Hearing. *See id*. at 158. Thus, a finding that Petitioner did not knowingly and voluntarily agree to the Appeal Waiver would not only conflict with the record, it would also impermissibly conflict with the Fifth Circuit's ruling. *See Kalish*, 780 F.2d at 508 (citing *Jones*, 614 F.2d at 82)

17

("[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions.").

The Plea Hearing was therefore sufficient under Fifth Circuit precedent to ensure that Petitioner understood the effect of the Appeal Waiver and knowingly and voluntarily agreed to plead guilty. *See Araromi*, 477 F. App'x at 160; *Higgins*, 739 F.3d at 736-37; *McKinney*, 406 F.3d at 746; *Fuller*, 46 F. App'x 732; *Portillo*, 18 F.3d at 292-93; *Baty*, 980 F.2d at 978-79. Because Petitioner understood the effect of the Appeal Waiver at the time he pleaded guilty, Trial Counsel's allegedly defective performance did not prejudice Petitioner, and Petitioner's ineffective assistance claim fails. *See Barela-Laso*, 2012 WL 3929347, at *; *Vaughn*, 2008 WL 2966017, at *2-3, *5.

### b.    The Plea Hearing

Petitioner argues that Trial Counsel rendered ineffective assistance at the Plea Hearing in multiple respects. *See* Mot. 25-30. A petitioner may attack a guilty plea where counsel failed to provide the petitioner with "reasonably competent advice." *Rosales v. United States*, Nos. 4:12–CV–176–A, 4:09–CR–160–A, 2012 WL 3222233, at *3 (N.D. Tex. Aug. 8, 2012) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). "[I]n order to satisfy the 'prejudice' requirement" of an ineffective assistance claim predicated on a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (citations omitted). "Mere allegations from a petitioner that he [or she] would have demanded a trial if counsel's advice had been different are insufficient to establish a reasonable probability that he [or she] would have actually done so." *Deckard v. United States*, Civil Action No. 9:07cv106, Crim. No. 9:01cr41, 2008 WL 2714106, at *16 (E.D. Tex. July 9, 2008) (citing *Joseph v. Butler*,

18

838 F.2d 786, 791 (5th Cir. 1988); *Wolfe v. Puckett*, 780 F. Supp. 408, 416 (N.D. Miss. 1991)).

Moreover, "[e]ven where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary," because in such a case "there is no actual and substantial disadvantage to the defense." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994) (internal quotation marks omitted) (quoting *United States v. Diaz*, 733 F.2d 371, 376 (5th Cir. 1984)). This is because, to establish a constitutional violation, the petitioner must "affirmatively prove" that he or she was prejudiced by his or her counsel's ineffective assistance, such that the result of the plea hearing would have differed had counsel not erred. *Id.* (citing *Strickland*, 466 U.S. at 694, *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986)). A plea is voluntary if the defendant understands the charges, understands the consequences of pleading guilty, and voluntarily chooses to plead guilty, without being coerced to do so. *Id.* at 657 (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)). A defendant understands the consequences of pleading guilty if he or she understands the maximum prison term and fine for the offense charged. *United States v. Young*, 981 F.2d 180, 184 & n.4 (5th Cir. 1992) (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)).

### i.    Trial Counsel's alleged failure to object during the Appeal Waiver admonishment

Petitioner argues that Trial Counsel should have objected when Aldama rather than Petitioner answered this Court's admonishment regarding the effect of the Appeal Waiver. *See* Mot. 26-27. Specifically, Petitioner contends that

> [h]ad [Trial C]ounsel objected to this structural error, it would have put [Petitioner] on notice that (1) the Court was addressing him, (2) the [A]ppeal [W]aiver would affect his ability to appeal the sentence, and (3) he should reject the government's offer as the appeal waiver was adverse to his desire to appeal.

*Id.* at 27.

Petitioner claims that, if Trial Counsel had objected, Petitioner "would have rejected the government's offer right there in open court and moved to proceed to trial" if "the government was unwilling to remove the" Appeal Waiver from the Plea Agreement. *Id*.

As explained above, Petitioner understood the effect of the Appeal Waiver at the time he pleaded guilty, even though he did not respond to the Court's admonition. Trial Counsel's failure to object during the Appeal Waiver admonishment therefore had no effect on Petitioner's decision to plead guilty. As a result, Petitioner cannot establish that, "but for [Trial C]ounsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill*, 474 U.S. at 59 (citations omitted). As a result, the Court rejects this claim.

### ii.     Trial Counsel's failure to object during the statutory maximum admonishment

Petitioner argues that, at the Plea Hearing, this Court misstated the maximum and minimum statutory penalty Petitioner faced. *See* Mot. 27-29. Specifically, Petitioner contends that the Court erroneously informed him that he faced a *maximum* of ten years of incarceration, rather than a *minimum* of ten years. *See id*. at 27-28. Petitioner claims that if Trial Counsel "objected to the Court's misinformation regarding the statutory maximum, [Petitioner] would have entered a plea of 'not guilty' and moved to proceed to trial." *Id*. at 28.

Federal Rule of Criminal Procedure 11(b)(1) requires the court to inform the defendant of, and make sure the defendant understands, "any maximum possible penalty, including imprisonment," as well as "any mandatory minimum penalty," before accepting the defendant's guilty plea. Fed. R. Crim. P. 11(b)(1)(H)-(I). When a court incorrectly advises a defendant regarding his or her sentence range, and the defendant's attorney fails to object, that attorney's assistance can be constitutionally ineffective. *See United States v. Chapa*, 181 F.3d 96 (5th Cir.

20

1999); *United States v. Guerra*, 94 F.3d 989, 991, 995 (5th Cir. 1996). However, such an error does not prejudice the petitioner if the petitioner previously signed a plea agreement that reflects the correct sentence range; by voluntarily signing the plea agreement, the petitioner indicates his or her willingness to subject himself or herself to that sentence. *See United States v. Williams*, 455 F. App'x 468, 468 (5th Cir. 2011); *United States v. Lara*, 313 F. App'x 702, 703 (5th Cir. 2009) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)); *United States v. Gonzalez*, 223 F. App'x 398, 400 (5th Cir. 2007) (citing *Dominguez Benitez*, 542 U.S. at 83; *United States v. Vonn*, 535 U.S. 55, 58-59 (2002)).

A criminal defendant who (1) conspires to possess 500 grams of a mixture or substance containing a detectable amount of cocaine with intent to distribute same and (2) has previously been convicted of a felony drug offense faces "a term of imprisonment which may not be less than 10 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1). *See also id*. § 846 (providing that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy"). Thus, by pleading guilty to Count One of the Indictment and by admitting to the prior convictions in the Notice of Enhanced Penalty, Petitioner faced a minimum statutory sentence of ten years and a maximum statutory sentence of life imprisonment.

The Court admonished Petitioner regarding his applicable statutory sentence on two separate occasions at the Plea Hearing. On the first occasion, the Court admonished Petitioner that he faced "not less than ten years of incarceration or more than life." Plea Hr'g Tr. 17. This admonition correctly informed Petitioner of the applicable statutory minimum and maximum sentence. *See* 21 U.S.C. §§ 841(b)(1), 846. Following this admonition, Petitioner affirmed that he

21

understood the sentence he faced. Plea Hr'g Tr. 17. On the second occasion, however, the transcript reflects that the Court admonished Petitioner that "the maximum statutory penalty is *up to* ten years of incarceration." *Id*. at 25 (emphasis added). Petitioner again affirmed that he understood. *See id*. Neither Petitioner nor Trial Counsel objected or otherwise called this disparity to the Court's attention. *See id*.

Nevertheless, this error did not prejudice Petitioner. The Plea Agreement correctly states that "as a result of the [Notice of Enhanced Penalty], the range of punishment for [Petitioner]'s offense is a term of imprisonment of not less than ten (10) years or more than life." Plea Agreement 1. Petitioner signed the Plea Agreement, which specified the correct sentence range, before the Court erroneously admonished Petitioner. *Id*. at 1, 5. By signing the Plea Agreement, Petitioner demonstrated that he was willing to subject himself to the possibility that he would receive a sentence between ten years and life. The Court's erroneous admonition, which occurred long after Petitioner signed the Plea Agreement, therefore had no effect on his decision to plead guilty. *See Williams*, 455 F. App'x at 468; *Lara*, 313 F. App'x at 703; *Gonzalez*, 223 F. App'x at 400. Moreover, the Court correctly advised Petitioner of the maximum and minimum sentence he faced prior to the erroneous admonition, and Petitioner affirmed at this time that he understood and nevertheless opted to proceed with the Plea Hearing. *See* Plea Hr'g Tr. 17. Thus, Petitioner cannot show that "he would not have pleaded guilty and would have insisted on going to trial" if Trial Counsel had objected to the erroneous admonition. *See Hill*, 474 U.S. at 59 (citations omitted). The Court accordingly dismisses this claim.

### iii. Trial Counsel's alleged failure to notify the Court that he did not explain the Plea Agreement to Petitioner

Petitioner claims that, at the Plea Hearing, the Court asked Petitioner

> if he had a chance to "go over" the [P]lea [A]greement and discuss it with [Trial Counsel]. Under the advice of [Trial C]ounsel, [Petitioner] stated that he had. However, the Court's question was vague and [Petitioner]'s answer did not reflect the events as they had actually transpired. The truth is, the only thing that [Petitioner] and [Trial C]ounsel discussed was whether or not he should plead guilty. [Petitioner] never discussed the actual terms of the [P]lea [A]greement with [Trial C]ounsel, he never reviewed the [P]lea [A]greement himself, nor was he provided with his own copy of the [P]lea [A]greement. In fact, [Petitioner] never actually retained a copy of the [P]lea [A]greement or went over its contents until he was "in prison."

Mot. 29 (citations omitted). *See also* Plea Hr'g Tr. 10 ("THE COURT: . . . Did you have a chance to go over that plea agreement and discuss it with your attorney before you signed it? DEFENDANT ARAROMI: Yes, Your Honor.").

Petitioner therefore argues that Trial Counsel

> had an affirmative duty to object so as to put the Court on notice that (1) [Petitioner] had never actually reviewed the terms of the agreement, (2) he had not been provided with his own copy of the agreement, and (3) it was not in [Petitioner]'s best interests to answer the Court's question in the mannor [sic] it was asked.

Mot. 30.

Petitioner contends that Trial Counsel failed to do so, and thereby rendered constitutionally ineffective assistance. *See id.*

A petitioner who has voluntarily signed a plea agreement generally cannot argue in a subsequent proceeding that he or she did not have a chance to review or discuss the plea agreement with his or her attorney. *See Bustos v. United States*, CIVIL ACTION NO. 4:11cv132, CRIMINAL ACTION NO. 4:09cr28, 2014 WL 631641, at *3 (E.D. Tex. Feb. 14, 2014); *Brewer v. United States*, CIVIL ACTION NO. 4:10cv713, CRIMINAL ACTION NO. 4:07cr246(12), 2014 WL 548151, at *2-3 (E.D. Tex. Feb. 7, 2014); *United States v. De Cay*, Criminal Action No. 05–186, 2009 WL 982099, at *8-9 (E.D. La. Apr. 9, 2009), *appeal dismissed by* 359 F. App'x 514 (5th Cir. 2010). "Even where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary,"

because in such a case "there is no actual and substantial disadvantage to the defense." *DeVille*,
21 F.3d at 659 (internal quotation marks omitted) (quoting *Diaz*, 733 F.2d at 376). A plea is
voluntary if the defendant understands the charges, understands the consequences of pleading
guilty, and voluntarily chooses to plead guilty, without being coerced to do so. *Id*. at 657
(quoting *Frank*, 646 F.2d at 882). A defendant understands the consequences of pleading guilty
if he or she understands the maximum prison term and fine for the offense charged. *Young*, 981
F.2d at 184 & n.4 (quoting *Rivera*, 898 F.2d at 447).

For these reasons, Petitioner's claim fails. Petitioner affirmed to this Court that he had an
opportunity to review the Plea Agreement with Trial Counsel before he signed it. *See* Plea Hr'g
Tr. 10. Additionally, Petitioner affirmed that he fully understood the charges, the sentence he
faced, and the consequences of pleading guilty. *See id*. at 2-22. That is sufficient to defeat
Petitioner's argument that Trial Counsel rendered ineffective assistance by failing to review the
Plea Agreement with him. *See Williams v. Quarterman*, Civil Action No. 3:07–CV–1805–G
(BH), 2009 WL 1024292, at *7 (N.D. Tex. Apr. 15, 2009); *De Cay*, 2009 WL 982099, at *8-10.
Thus, even assuming for the sake of argument that this Court's question at the Plea Hearing was
vague and Petitioner's response was incomplete, Petitioner cannot establish that Trial Counsel
prejudiced him by failing to object.

Thus, Petitioner has failed to establish that Trial Counsel rendered ineffective assistance
at the Plea Hearing in any way.

c.      **The Sentencing Hearing**

Petitioner also argues that Trial Counsel rendered ineffective assistance in several
respects at the Sentencing Hearing. *See* Mot. 30-44. To demonstrate ineffective assistance of
counsel in the context of a sentencing hearing in a non-capital case, a petitioner must show both

24

that his or her counsel's performance was deficient, and that "there is a reasonable probability that but for trial counsel's errors the Movant's non-capital sentence would have been significantly less harsh." *United States v. Arellano-Meraz*, Civil Action No. SA–10–CA–023–XR, Criminal Case No. SA–08–CR–685–XR, 2010 WL 316476, at *1 (W.D. Tex. Jan. 25, 2010) (internal quotation marks omitted) (quoting *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993)). For the following reasons, Petitioner has failed to do so.

### i.   Trial Counsel's alleged failure to adequately object to the sentence enhancement for possession of a dangerous weapon

If a defendant possesses a dangerous weapon during a drug offense, that defendant's guideline sentence should be increased by two base offense levels. *See* U.S.S.G. § 2D1.1(b)(1) (2010).[12] The Court found that Petitioner possessed a dangerous weapon during the conspiracy to which he pleaded guilty, and increased his sentence accordingly. *See* Sentencing Hr'g Tr. 55 ("The Court is going to find that the possession of firearms . . . [is] correctly scored."). Petitioner argues that this enhancement was improper. *See* Mot. 31-35. Although Trial Counsel objected – albeit unsuccessfully – to the sentence enhancement under § 2D1.1(b)(1), Petitioner argues that Trial Counsel nonetheless rendered ineffective assistance by "failing to raise particular grounds and cite binding precedent in support of his objections to the PSR's enhancement for gun possession under U.S.S.G. § 2D1.1(b)(1)." *Id.*

A sentencing court may enhance a defendant's sentence under § 2D1.1(b)(1) if the Government proves, by a preponderance of the evidence, that the defendant possessed a

---

[12] Because this Court sentenced Petitioner on December 20, 2010, the Court applied the 2010 Sentencing Guidelines, which became effective on November 1, 2010. *See United States v. Ramos*, 509 F. App'x 317, 318 (5th Cir. 2013) (citing *United States v. Rodarte-Vasquez*, 488 F.3d 316, 322 (5th Cir. 2007)) (holding that a sentencing court should generally apply the version of the Sentencing Guidelines in effect at the time of sentencing).

dangerous weapon during the course of a drug offense. *See United States v. Zapata-Lara*, 615

F.3d 388, 390 (5th Cir. 2010). There are two ways the Government may carry this burden of

proof:

> First, it can prove that the defendant personally possessed the weapon, by
> showing a temporal and spatial relationship of the weapon, the drug trafficking
> activity, and the defendant. To make that showing, the government must provide
> evidence that the weapon was found in the same location where drugs or drug
> paraphernalia are stored or where part of the transaction occurred.
>
> "Alternatively, when another individual involved in the commission of an offense
> possessed the weapon, the government must show that the defendant could have
> reasonably foreseen that possession." The guidelines hold a defendant responsible
> for all reasonably foreseeable acts of the conspiracy. Thus, a sentencing court may
> often "infer foreseeability" from a coconspirator's knowing possession of a
> weapon.

*Id*. (quoting *United States v. Hooten*, 942 F.2d 878, 881 (5th Cir. 1991)).

These two methods of proof are known, respectively, as personal possession and vicarious

possession. *See United States v. DeLaGarza*, 460 F. App'x 406, 409 (5th Cir. 2012). Either

method of proof is sufficient to satisfy § 2D1.1(b)(1). *See Zapata-Lara*, 615 F.3d at 390.

The Government may demonstrate that a defendant *personally* possessed a dangerous

weapon by showing that the weapon "was available and accessible to [the defendant] to use as

protection for himself, his drugs, and his drug proceeds." *United States v. Obregon*, 425 F.

App'x 313, 314 (5th Cir. 2011) (quoting *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764

(5th Cir. 2008)). The enhancement "should be applied if the weapon was present, unless it was

clearly improbable that the weapon was connected with the offense." *United States v. Ruiz*, 621

F.3d 390, 396 (5th Cir. 2010) (quoting U.S.S.G. § 2D1.1 cmt. 3). "It is not necessary for

possession of the weapon to play an integral role in the offense or to be sufficiently connected

with the crime to warrant prosecution as an independent firearm offense." *United States v.

Villareal*, 920 F.2d 1218, 1221 (5th Cir. 1991) (citing *United States v. Hewin*, 877 F.2d 3, 5 (5th

Cir. 1989)).

Alternatively, the Government may demonstrate *vicarious* possession by showing that one or more of the defendant's co-conspirators possessed a dangerous weapon during the course of the conspiracy, and that the defendant could reasonably have foreseen that possession. *Zapata-Lara*, 615 F.3d at 390. The Fifth Circuit has "long held that a large 'amount of drugs . . . delivered and [high] street value increase the likelihood – and thus foreseeability – that those involved in the conspiracy will have dangerous weapons.'" *United States v. Requejo*, 537 F. App'x 474, 476 (5th Cir. 2013) (quoting *Cisneros-Gutierrez*, 517 F.3d at 766). Where evidence exists that a "coconspirator possessed a firearm during the course of the conspiracy" and the defendant "heard about the coconspirator's gun," a district court may permissibly find that the "codefendant's possession of a dangerous weapon was reasonably foreseeable" for the purposes of § 2D1.1(b)(1). *See United States v. Miles*, 346 F. App'x 993, 994 (5th Cir. 2009) (citing *Cisneros-Gutierrez*, 517 F.3d at 765; *United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215 (5th Cir. 1990)).

When deciding whether to enhance a defendant's sentence under § 2D1.1(b)(1), the court "may consider any relevant evidence without regard to its admissibility at trial, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its probable accuracy." *United States v. Barnes*, 138 F. App'x 655, 659 (5th Cir. 2005) (citing *United States v. Gaytan*, 74 F.3d 545, 558 (5th Cir. 1996)).

For the reasons described below, the Court correctly concluded that Petitioner vicariously possessed a dangerous weapon during the commission of a drug offense within the meaning of §

2D1.1(b)(1).[13] Because the Court properly applied the § 2D1.1(b)(1) enhancement, Petitioner cannot prove that his sentence "would have been significantly less harsh" if Trial Counsel had posed his objection in a different manner, so his ineffective assistance claim fails. *See Spriggs*, 993 F.2d at 88.

At the Sentencing Hearing, the Government introduced the testimony of Special Agent Paul Davis ("Agent Davis"), who testified as to the content of wiretapped conversations between Petitioner and various coconspirators also named in the Indictment. *See* Sentencing Hr'g Tr. 5-38. Agent Davis testified that Petitioner was the leader of the Bloods gang in El Paso. *See id*. at 8-9. He also testified that various members of the Bloods regularly advised Petitioner of shootings and other attacks the gang committed against their competitors in the drug trade, as well as against other enemies of the gang. *See id*. at 9-11 (plan to violently retaliate against person who assaulted Petitioner at a nightclub); *id*. at 13-17 (codefendant advising Petitioner that the Bloods committed shooting at competitor's trap house); *id*. at 17-20 (discussing plans for a shooting at a nightclub); *id*. at 20-21, 23-27 (discussing a murder of a person associated with a rival gang); *id*. at 21-23 (discussing plans for "putting some guns around the city"). Agent Davis's testimony reflected that Petitioner, as leader of the Bloods, orchestrated or at least supervised some – though not all – of these attacks. *See id*. at 10 (stating that Petitioner was "advising that he was going to orchestrate" an attack); *id*. at 16, 36 (Petitioner advising a codefendant to discard evidence of a shooting). Agent Davis further testified that, although law enforcement officials never detained Petitioner while he had a weapon on his person, law

---

[13] Because Petitioner's vicarious possession of a firearm is alone sufficient to support the § 2D1.1(b)(1) enhancement, the Court need not analyze whether Petitioner also personally possessed a dangerous weapon during the course of a drug offense. *See Zapata-Lara*, 615 F.3d at 390. Nevertheless, the Court notes that the PSR also contains sufficient evidence of personal possession. *See* PSR 17 (describing how a confidential source "attempted to convince [Petitioner] to sell him/her a Glock .45 caliber pistol, which was present at the residence" where Petitioner consummated a drug exchange).

enforcement nonetheless seized several firearms from persons associated with the gang. *See id.* at 30-31. Although Trial Counsel elicited some testimony from Agent Davis on cross-examination that could cast some doubt on his testimony, *see id.* at 28-33, Agent Davis's testimony was sufficient to establish that Petitioner was involved in a drug conspiracy in which firearm possession was highly foreseeable.[14] *See Requejo*, 537 F. App'x at 476 (quoting *Cisneros-Gutierrez*, 517 F.3d at 766); *Zapata-Lara*, 615 F.3d at 390 (quoting *Aguilera-Zapata*, 901 F.2d at 1215); *Miles*, 346 F. App'x at 994 (holding that where evidence exists that a "coconspirator possessed a firearm during the course of the conspiracy" and the defendant "heard about the coconspirator's gun," a district court may permissibly find that the "codefendant's possession of a dangerous weapon was reasonably foreseeable" for the purposes of § 2D1.1(b)(1)).

Thus, Petitioner vicariously possessed a dangerous weapon during the course of a drug offense, and this Court properly increased Petitioner's sentence pursuant to § 2D1.1(b)(1).[15] *See*

---

[14] Petitioner strenuously argues that the § 2D1.1(b)(1) enhancement was improper because Agent Davis's testimony cannot establish that *he personally* possessed a dangerous weapon during the commission of the offense. *See* Mot. 31-35. This argument fails, because, as explained above, the elements of personal possession are different from those of vicarious possession, and either form of possession is sufficient to warrant a sentence enhancement under § 2D1.1(b)(1). *Cf. DeLaGarza*, 460 F. App'x at 410 (holding that the district court incorrectly imported considerations relevant to the personal possession test into the vicarious possession test); *Zapata-Lara*, 615 F.3d at 390 (indicating that either form of possession is sufficient to warrant a sentence enhancement).

[15] Petitioner contends that the § 2D1.1(b)(1) enhancement is improper under the authority of *United States v. Eastland*, 989 F.2d 760 (5th Cir. 1993). *See* Mot. 33-34. Petitioner therefore argues that Trial Counsel rendered ineffective assistance by failing to cite *Eastland* in his objection. *See* Mot. 34-35. *Eastland*, however, relates only to the elements of *personal* possession, not *vicarious* possession. *See* 989 F.2d at 769-70. Again, the elements of personal possession are different from those of vicarious possession, and either form of possession is sufficient to warrant a sentence enhancement under § 2D1.1(b)(1). *Cf. DeLaGarza*, 460 F. App'x at 410 (holding that the district court incorrectly imported considerations relevant to the personal possession test into the vicarious possession test); *Zapata-Lara*, 615 F.3d at 390 (indicating that either form of possession is sufficient to warrant a sentence enhancement). Because the Court properly applied § 2D1.1(b)(1) on vicarious possession grounds, Trial Counsel's citation to a personal possession case would not have changed the result. Petitioner therefore cannot show that his sentence "would have been significantly less harsh" if Trial Counsel had cited *Eastland*, so Trial Counsel did not render ineffective assistance. *See Spriggs*, 993 F.2d at 88 (emphasis omitted).

*Zapata-Lara*, 615 F.3d at 390 (quoting *Hooten*, 942 F.2d at 881). Because the Court committed

no error in applying this enhancement, Petitioner cannot show that his sentence "would have

been significantly less harsh" if Trial Counsel had objected in a different fashion. *See Spriggs*,

993 F.2d at 88 (emphasis omitted). Petitioner's ineffective assistance claim therefore fails.

### ii. Trial Counsel's alleged failure to argue that the Court should sentence Petitioner using a 1:1 ratio for crack cocaine

Petitioner argues that Trial Counsel rendered ineffective assistance by failing to ask the

Court to sentence Petitioner using a 1:1 crack-to-powder cocaine ratio instead of an 18:1 ratio.

*See* Mot. 35-41. Prior to 2010, drug crimes involving 5 grams or more of crack cocaine were

punished equally to offenses involving 500 grams or powder cocaine, and crimes involving 50

grams or more of crack cocaine were punished equally to offenses involving 5 kilograms or more

of powder cocaine. *See* 21 U.S.C.A. § 841(b)(1)(A)(ii)-(iii), (b)(1)(B)(ii)-(iii) (West 2009). In

this way, the law "imposed upon an offender who dealt in powder cocaine the same sentence it

imposed upon an offender who dealt in one one-hundredth that amount of crack cocaine."

*Dorsey v. United States*, --- U.S. ---- ,132 S.Ct. 2321, 2326 (2012).

Congress, deeming this disparity unacceptable, enacted the FSA, which, among other

things, "reduce[d] the crack-to-powder cocaine disparity from 100-to-1 to 18-to-1." *Id. Accord*

21 U.S.C.A. § 841(b)(1)(A)(ii)-(iii), (b)(1)(B)(ii)-(iii) (West 2011). The Sentencing Guidelines

were likewise amended to reflect the changes in the FSA. *Compare* U.S.S.G. § 2D1.1(c) (2009)

*with* U.S.S.G. § 2D1.1(c) (2011) (altering the base offense levels for various quantities of

---

Nor did Trial Counsel render ineffective assistance by failing to cite certain non-binding cases from other jurisdictions, especially to the extent those cases are inconsistent with Fifth Circuit precedent. *See* Mot. 33-34 (citing *United States v. Cooper*, 111 F.3d 845, 847 (11th Cir. 1997); *United States v. Kelso*, 942 F.2d 680, 681-82 (9th Cir. 1991); *United States v. Gillock*, 886 F.2d 220, 222-23 & n.1 (9th Cir. 1989)); *Cuellar v. Thaler*, No. 3:08–CV–1391–O, 2010 WL 5643472, at *5 (N.D. Tex. Dec. 30, 2010).

cocaine base, i.e., crack).

Some courts and commentators advocate eliminating this disparity completely by adopting a 1:1 crack-to-powder sentencing ratio, rather than 100:1 or 18:1. *See United States v. Williams*, No. 09–CR–30099–MJR, 2010 WL 1325229, at *4-5 (S.D. Ill. Mar. 30, 2010). Although a 1:1 sentencing ratio has not been enacted into the United States Code or the Sentencing Guidelines, several district courts throughout the United States, including some in the Fifth Circuit, have exercised their discretion to deviate from the Sentencing Guidelines and apply a 1:1 ratio in some or all crack cases. *See id.* at *8; *United States v. Greer*, 699 F. Supp. 2d 876, 880 (E.D. Tex. 2010); *United States v. Lewis*, 623 F. Supp. 2d 42, 47 (D.D.C. 2009); *United States v. Gully*, 619 F. Supp. 2d 633, 646 (N.D. Iowa 2009); *Henderson v. United States*, 660 F. Supp. 2d 751, 754 (E.D. La. 2009); *United States v. Medina*, No. 08CR256–L, 2009 WL 2948325, at *3 (S.D. Cal. Sept. 11, 2009); *United States v. Owens*, Crim. No. 08–48 Erie, 2009 WL 2485842, at *1-3 (W.D. Pa. Aug. 12, 2009). *See also Spears v. United States*, 555 U.S. 261, 265-66 (2009) (holding that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines") (citing *Kimbrough v. United States*, 552 U.S. 85 (2007)).

This Court sentenced Petitioner in accordance with the 18:1 ratio adopted by the FSA, but not the 1:1 ratio adopted by the courts cited above. *See* Sentencing Hr'g Tr. 42-44. Petitioner argues that Trial Counsel should have (1) requested that the Court exercise its discretion to apply the 1:1 sentencing ratio in the Case and (2) directed the Court's attention to the above-cited cases in which courts departed from the crack/powder disparity on the basis of policy disagreements. *See* Mot. 35-41.

Petitioner's argument fails because Trial Counsel did indeed request that the Court apply

a more lenient crack-to-powder ratio. Trial Counsel filed an objection to the PSR citing Supreme Court precedent that "the Court may consider the disparity between the guidelines treatment of crack and powder offenses." *See* ECF No. 408-3, at 1 (citing *Kimbrough*, 552 U.S. 85); ECF No. 408-4, at 3. Thus, Trial Counsel's conduct was not deficient. *See Guzman-Santiago v. United States*, Civil No. 3:9cv2127 (JBA), 2012 WL 6212651, at *2 (D. Conn. Dec. 13, 2012) (holding that petitioner's "counsel's performance could not have been 'outside the wide range of professionally competent assistance' for failure to argue that the 100:1 crack to cocaine ratio should not apply, because defense counsel raised this very issue at sentencing"); *cf. Twine v. United States*, No. 12–CV–227 (DLI), 2014 WL 119370, at *9 (E.D.N.Y. Jan. 10, 2014) (rejecting analogous argument in context of direct appeal).

Petitioner acknowledges that Trial Counsel requested a sentencing variance, but argues that Trial Counsel nonetheless rendered ineffective assistance by failing to direct the Court to the above-cited cases that apply a 1:1 sentencing ratio in crack cases. *See* Mot. 36, 38, 40-41. Even assuming that Trial Counsel's representation was deficient in this respect, Petitioner cannot show that he was prejudiced by Trial Counsel's failure. Courts in the Fifth Circuit and elsewhere have rejected ineffective assistance of counsel claims predicated on a defense attorney's alleged failure to request that the Court apply a 1:1 crack/powder cocaine ratio when sentencing the petitioner. *See United States v. McKnight*, 386 F. App'x 384, 388 (4th Cir. 2010); *United States v. Rhine*, Nos. 4:12–CV–931–A, 4:07–CR–183–A, 2013 WL 1718108, at *1-2, *5-6 (N.D. Tex. Apr. 18, 2013); *Guzman-Santiago*, 2012 WL 6212651, at *2 . The United States District Court for the Northern District of Texas's opinion in *Rhine* is particularly instructive. In that case, a § 2255 petitioner claimed

he was denied effective assistance of counsel because his attorney . . . failed to

> argue that the court had authority, based on Supreme Court precedent, to vary
> from the crack cocaine guidelines in the United States Sentencing Guidelines, as
> other district courts have done. [The petitioner's attorney] also failed to argue that
> the court should apply a one-to-one ratio on sentencing of crack cocaine offenders
> following the reasoning of *Spears v. United States*, 555 U.S. 261, 129 S.Ct. 840,
> 172 L.Ed.2d 596 (2009).

2013 WL 1718108, at *1.

The court rejected the petitioner's argument on the ground that the petitioner could not "show he

was prejudiced by this omission because he [could not] show that the outcome of the proceeding

would have been different even if [his attorney] had raised the issue." *Id*. at *5. The sentencing

court in *Rhine* imposed a relatively harsh sentence based on the petitioner's extensive prior drug

activities and the seriousness of the offense of conviction. *See id*. at *5-6. The *Rhine* court

therefore concluded that the petitioner could not "show he was prejudiced by [his attorney's]

failure to raise this issue because the court would not have imposed a lesser sentence based on

the one-to-one crack-powder ratio." *Id*. at *6. *Accord McKnight*, 386 F. App'x at 388 ("Nothing

in the record, however, suggests that the court would have further reduced McKnight's sentence,

and McKnight provides no facts in support of this claim. Thus, any conclusion by this court

regarding counsel's failure to raise this argument would be premised on surmise or

speculation.").

Here, as in *Rhine*, this Court indicated a desire to punish Petitioner as it did because of

his prior convictions, his leadership role in the conspiracy, the quantity of drugs involved in the

offense, and the involvement of one or more firearms in the conspiracy. *See* Sentencing Hr'g Tr.

54-55. While the Court expressed willingness to afford Petitioner the benefit of the FSA, the

Court was not willing to apply a crack-to-powder ratio more lenient than that embodied in the

FSA. *See id*. at 42. *See also* ECF No. 541 (denying Petitioner's motion for retroactive application

of the post-FSA sentencing guidelines, ECF No. 535, on the grounds that Petitioner was indeed

33

sentenced "pursuant to the Amended Guidelines and therefore received the benefit of those amendments in his original sentence and is not entitled to further relief"). Indeed, the Government addressed the possibility that the Court could deviate even further from the ratio in the FSA, and argued that such a deviation was not warranted given Petitioner's characteristics. *See* Sentencing Hr'g Tr. 46 ("If the Court feels – thinks that the defendant deserves more of a break because of that disparity, that perhaps a disparity wasn't taken into account enough by the change [enacted by the FSA and the accompanying changes to the Sentencing Guidelines], I would argue that's offset by the evidence I put on of the violence of this defendant."). The Court, based on its consideration of Petitioner's characteristics, conduct, and history, determined that a sentence of 292 months of incarceration would best effectuate the goals of the Sentencing Guidelines. *See id.* at 55. As a result, the outcome of the Sentencing Hearing would not have changed if Trial Counsel made Petitioner's preferred objection, so Petitioner's arguments are too speculative to establish prejudice. *See Rhine*, 2013 WL 1718108, at *1-2, *5-6. *Accord McKnight*, 386 F. App'x at 388.

The Court therefore rejects Petitioner's claim that Trial Counsel rendered ineffective assistance by failing to request that the Court apply a 1:1 crack-to-powder cocaine ratio when sentencing Petitioner.

### iii.    Trial Counsel's alleged failure to object to the Court's calculation of drug quantity

Petitioner argues that this Court made its determination regarding the quantity of drugs attributable to his offense without making the necessary findings. *See* Mot. 42-43. Specifically, Petitioner contends that this Court did not "attempt to establish when [Petitioner] joined the conspiracy, the quantity of drugs within the scope of the agreement or the amount of drugs that

he could reasonably foresee distributed." *Id.* at 42. Petitioner therefore argues that

> [a]lthough the 'Offense Conduct' section of the PSR lists those facts that resulted
> in the Probation Office's conclusion that 123.54 grams of crack cocaine, 1,465.13
> grams of powder cocaine and 29.5 grams of N-benzypiperazine are attributable to
> [Petitioner], the District Court did not make the necessary findings to confirm this
> conclusion.

*Id.*

Thus, Petitioner claims that Trial Counsel rendered ineffective assistance by failing to object on

this ground. *See id.* at 42-43.

When selecting a criminal defendant's sentence, a court may consider as relevant conduct

"all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or

willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1) (2010). Additionally, "in the case of a

jointly undertaken criminal activity" such as a conspiracy, the court may consider "all reasonably

foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal

activity" if those acts and omissions "occurred during the commission of the offense of

conviction, in preparation for that offense, or in the course of attempting to avoid detection or

responsibility for that offense." *Id.* In *United States v. Cooper*, 274 F.3d 230 (5th Cir. 2001), the

Fifth Circuit held:

> It is well established that relevant conduct under the sentencing guidelines
> includes all reasonably foreseeable acts of coconspirators in furtherance of the
> conspiracy. Nonetheless, "the reasonable foreseeability of all drug sales does not
> automatically follow from membership in the conspiracy." To determine a
> defendant's sentence for participation in a drug conspiracy, the district court must
> make the following findings: (1) when the defendant joined the conspiracy; (2)
> the quantities of drugs that were within the scope of the agreement; and (3) the
> quantities the defendant could reasonably foresee being distributed by the
> conspiracy.

274 F.3d at 241 (quoting *United States v. Wilson*, 116 F.3d 1066, 1077 (5th Cir. 1997), *vacated
in part sub. nom. United States v. Brown*, 123 F.3d 213 (5th Cir. 1997) (en banc)).

"A district court may consider estimates of the quantity of drugs for sentencing purposes.

35

The court may extrapolate the quantity from any information that has sufficient indicia of reliability to support its probable accuracy, including a probation officer's testimony, a policeman's approximation of unrecovered drugs, and even hearsay." *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006) (quoting *United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998)) (internal quotation marks omitted). For instance, a sentencing court may adopt facts in a presentence investigation report "without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence." *Alford*, 142 F.3d at 832 (citing *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994)). There are many ways in which drug quantity findings in a presentence investigation report may be supported by an adequate evidentiary basis. These ways include, but are not necessarily limited to, corroboration from drug seizures and wiretaps;[16] the defendant's own admissions in a plea agreement or to others;[17] the testimony or sworn statements of law enforcement officers;[18] and the statements and admissions of coconspirators, codefendants, or confidential sources.[19]

   To prevent a sentencing court from adopting a presentence investigation report supported by an adequate evidentiary basis, the defendant must introduce rebuttal evidence that "demonstrate[s] that the information contained in the PSR is 'materially untrue, inaccurate or unreliable.'" *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999) (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)). "Mere objections do not suffice as competent

---

[16] *See United States v. Siros*, 469 F. App'x 373, 374 (5th Cir. 2012); *Valdez*, 453 F.3d at 267.

[17] *See Siros*, 469 F. App'x at 374; *United States v. Flores*, 452 F. App'x 484, 485 (5th Cir. 2011); *United States v. Ortiz*, 209 F. App'x 379, 380 (5th Cir. 2006).

[18] *See United States v. Martinez*, 228 F. App'x 502, 503 (5th Cir. 2007).

[19] *See United States v. Jackson*, 596 F.3d 236, 243-44 (5th Cir. 2010); *United States v. Chavez*, 947 F.2d 742, 746-47 (5th Cir. 1991).

rebuttal evidence." *Parker*, 133 F.3d at 329 (citing *Puig-Infante*, 19 F.3d at 943). When a petitioner argues that his or her counsel rendered ineffective assistance by failing to introduce evidence to rebut a presentence investigation report, the petitioner must identify the missing evidence and demonstrate how that evidence casts doubt on the information set forth in the report. *See Palacios v. United States*, Nos. 3:12–CV–0788–D, 3:08–CR–0267–D (4), 2013 WL 2367774, at *5 (N.D. Tex. May 30, 2013); *Harris v. United States*, Civil No. 7:10–CV–039–D, Criminal No. 7:05–CR–026–D, 2013 WL 1294680, at *3 (N.D. Tex. Mar. 29, 2013); *Hernandez v. United States*, Nos. 3:11–CV–2482–N–BH, 3:06–CR–0192–N (7), 2012 WL 781955, at *4 (N.D. Tex. Feb. 9, 2012), *report and recommendation adopted by* 2012 WL 785931 (N.D. Tex. Mar. 9, 2012); *United States v. Moreno*, Criminal Action No. H-95-142-67, Civil Action No. H-03-1622, 2006 WL 2706772, at *2 (S.D. Tex. Sept. 18, 2006); *United States v. Alexander*, No. CRIM.A. 02-315, 2005 WL 1038603, at *3 (E.D. La. Apr. 22, 2005).

Here, the drug quantities listed in the PSR were supported by an adequate evidentiary basis. In the factual basis to the Plea Agreement, Petitioner admitted to joining the conspiracy no later than 2007. *See* Plea Agreement 6; Plea Hr'g Tr. 28-33. The PSR calculated the quantity of drugs within the scope of the conspiracy on the basis of the "123.54 grams of crack cocaine, 196.86 grams of powder cocaine, and 29.5 grams of N-benzypiperazine" that "were seized" by law enforcement officials "[d]uring the conspiracy," plus "1,269 grams of historical powder cocaine" that an "investigation revealed . . . was distributed within the Bloods criminal organization." PSR 1, 8. The Plea Agreement and the PSR contain extensive and detailed corroborating evidence from law enforcement officials and confidential sources regarding the conspiracy's drug transactions. *See* Plea Agreement 6-8; PSR 8-31; Plea Hr'g Tr. 28-33. *See also Martinez*, 228 F. App'x at 503 (holding that a PSR possesses an adequate evidentiary basis when

it is corroborated by the statements of law enforcement officials involved in the investigation). Moreover, both the Plea Agreement and the PSR identify Petitioner as the top leader of the Bloods gang in El Paso, Texas, with extensive knowledge of the gang's drug transactions, so Petitioner could reasonably foresee that the listed quantities of drugs would be distributed by the conspiracy. *See* Plea Agreement 6-8; PSR 8-31; Plea Hr'g Tr. 28-33.

These facts are sufficient to support findings regarding "(1) when [Petitioner] joined the conspiracy; (2) the quantities of drugs that were within the scope of the agreement; and (3) the quantities [Petitioner] could reasonably foresee being distributed by the conspiracy," as required by Fifth Circuit precedent. *See Cooper*, 274 F.3d at 241. As it was permitted to do, the Court made its quantity determinations implicitly based on the information in the PSR and the Plea Agreement. *See United States v. Carreon*, 11 F.3d 1225, 1231 (5th Cir. 1994) (permitting the implicit adoption of facts in the PSR). Because Trial Counsel did not introduce evidence at the Sentencing Hearing to rebut the drug quantity described in the PSR, *see* Sentencing Hr'g Tr. 40-41, 44-45, this Court was allowed to adopt the drug quantities therein as its own findings when sentencing Petitioner. *See Alford*, 142 F.3d at 832 (citing *Puig-Infante*, 19 F.3d at 943).

Because Petitioner was properly held accountable for the drug quantity listed in the PSR, Trial Counsel did not render ineffective assistance by failing to object to the Court's quantity calculation. As a result, Petitioner may only demonstrate ineffective assistance if he can identify rebuttal evidence that Trial Counsel should have introduced at the Sentencing Hearing to prevent the Court from adopting the PSR without further inquiry. *See id.* (citing *Puig-Infante*, 19 F.3d at 943).

The Motion does not identify any rebuttal evidence at all that would suggest that the drug quantity determinations are in any way materially untrue, inaccurate, or unreliable. *See* Mot. 41-

38

43. Consequently, Petitioner cannot demonstrate that Trial Counsel's failure to introduce rebuttal evidence was in any way deficient or prejudicial to Petitioner's defense. *See Palacios*, 2013 WL 2367774, at *5; *Harris*, 2013 WL 1294680, at *3; *Hernandez*, 2012 WL 781955, at *4; *Moreno*, 2006 WL 2706772, at *2; *Alexander*, 2005 WL 1038603, at *3.

Thus, Petitioner has failed to show that his sentence "would have been significantly less harsh" if Trial Counsel had objected to the drug quantity determinations in the PSR. *See Spriggs*, 993 F.2d at 88 (emphasis omitted). Trial Counsel therefore did not render constitutionally ineffective assistance by failing to object to the drug quantity determinations in the PSR or failing to introduce rebuttal evidence in an attempt to undermine those quantity determinations.

### iv.   Trial Counsel's alleged failure to raise *Apprendi* and *Jones* objections to Petitioner's sentence

Petitioner also argues in a footnote that Trial Counsel rendered ineffective assistance by failing to raise objections to his sentence under the rules announced by the United States Supreme Court in *Jones v. United States*, 526 U.S. 227 (1999) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See* Mot. 42. Specifically, Petitioner argues that this Court violated his constitutional rights because "neither the [I]ndictment nor the [P]lea [A]greement specified the amount of drugs attributable to" him. *Id.* (citations and internal quotation marks omitted). Petitioner therefore contends that Trial Counsel rendered ineffective assistance by failing to object accordingly. *See id.*

In *Apprendi* and *Jones*, the Supreme Court ruled that, other than the fact of a prior conviction, any fact that increases the penalty for a federal crime beyond the prescribed statutory maximum must be submitted to a jury, charged in an indictment, and proven beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 476, 490; *Jones*, 526 U.S. at 243 n.6. In other

words, a district court may not impose a sentence above the statutory maximum solely on the

basis of facts found by the court by a preponderance of the evidence. *See Apprendi*, 530 U.S. at

476, 490; *Jones*, 526 U.S. at 243 n.6.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the

principle established by *Apprendi* and *Jones* applied to the then-mandatory United States

Sentencing Guidelines. 543 U.S. at 226-244. However, the *Booker* Court, deeming this result at

odds with congressional intent, also excised the provision of the federal sentencing statute that

made the Guidelines binding on sentencing judges. *Id*. at 245-68. The *Booker* decision therefore

made the Sentencing Guidelines merely advisory. *Id*. at 245. With this provision excised, a court

may not impose a higher *statutory* sentence based on a drug quantity not alleged in the

indictment, but the court may impose a *guideline* sentence *within the applicable statutory range*

on the basis of facts found by the court by a preponderance of the evidence at the sentencing

hearing. *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

The Indictment charged Petitioner with conspiring to possess "500 grams or more of a

mixture or substance containing a detectable amount of cocaine . . . with intent to distribute

same." Indictment 2. Thus, based solely on the facts alleged in the Indictment and Petitioner's

prior convictions,[20] Petitioner faced "a term of imprisonment which may not be less than 10

years and not more than life imprisonment." 21 U.S.C. § 841(b)(1). *See also id*. § 846 (providing

that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter

shall be subject to the same penalties as those prescribed for the offense, the commission of

which was the object of the attempt or conspiracy"). Because Petitioner's sentence of 292

---

[20] In the following section of this Order, the Court considers and rejects Petitioner's argument that the Government
was required to include Petitioner's prior convictions in the Indictment in order to seek an enhanced penalty.

months was within the applicable statutory range for conspiracy to possess 500 grams of cocaine

with intent to distribute, no violation occurred under either *Apprendi* or *Jones*. Then, in

calculating Petitioner's *guideline* sentence, the Court considered the total amount of drugs

involved in the conspiracy, instead of relying solely the quantity specified in the Indictment, as is

permitted by *Booker*. *See Mares*, 402 F.3d at 519; U.S.S.G. § 1B1.3 (2010). The Court therefore

committed no constitutional violation, so Trial Counsel did not render ineffective assistance by

failing to raise an objection under *Apprendi* or *Jones*.[21] *See Lopez v. United States*, Nos. EP–13–

CV–35, EP–10–CR–1937–KC–1, 2013 WL 6813418, at \*7-8 (W.D. Tex. Dec. 20, 2013)

(rejecting analogous *Apprendi* challenge).

> **v.    Trial Counsel's alleged failure to object to the Court's consideration of Petitioner's prior convictions as sentencing factors rather than as elements of the offense**

Petitioner argues that "his sentence is illegal" because it was enhanced on the basis of his

prior convictions, which the Government did not allege in the Indictment. *See* Mot. 44. Petitioner

argues that Trial Counsel should have objected to the Government's failure to include

Petitioner's prior convictions in the Indictment rather than in the Notice of Enhanced Penalty. *Id.*

This argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998),

in which the Supreme Court held that the United States Constitution does not require the

Government, when seeking an enhanced penalty based on the defendant's prior conviction, to

---

[21] *United States v. Doggett*, 230 F.3d 160 (5th Cir. 2000) and *United States v. Meshack*, 225 F.3d 556 (5th Cir. 2000), *amended in part on r'hrg.*, 244 F.3d 367 (5th Cir. 2001), which Petitioner cites in support of his *Apprendi/Jones* argument, *see* Mot. 42, are not to the contrary. In *Doggett*, the defendant's sentence was impermissibly increased beyond the *statutory* maximum sentence the defendant could receive on the basis of the indictment and jury findings alone. *See* 230 F.3d at 162-67. By contrast, the Fifth Circuit rejected the defendant's challenge to his *guideline* sentence, holding that *Apprendi* does not "prohibit[] the trial court from determining the amount of drugs for relevant conduct purposes under the Sentencing Guidelines." *See id.* at 166. The *Meshack* court likewise rejected the argument that "an enhancement which increases a sentence within the statutory range but which does not increase the sentence beyond that range must be proved to the jury." *See* 225 F.3d at 576-77. Moreover, both *Doggett* and *Meshack* pre-date *Booker*, in which the Supreme Court squarely held that the *Apprendi/Jones* rule does not apply to the now-advisory Sentencing Guidelines. *See Booker*, 543 U.S. at 245-68.

charge that prior conviction in an indictment. 523 U.S. at 226-27. The Court therefore rejects Petitioner's claim.

Petitioner notes that some of the Justices have intimated that *Almendarez-Torres* may not have survived subsequent Supreme Court decisions. *See* Mot. 44 (citing *Shepard v. United States*, 544 U.S. 13, 27-28 (2005) (Thomas, J., concurring in part and concurring in the judgment)). Petitioner therefore argues that because of the "vague uncertainty about the validity and survivability of *Almendarez-Torres* . . . [Trial C]ounsel was ineffective for failing to object to [Petitioner's] sentence on the basis that his sentence is illegal because his indictment did not contain any allegation of a prior conviction." Mot. 44. This argument also fails. The Fifth Circuit has repeatedly held that "[a]lthough the decision in *Almendarez-Torres* has been called into question, the Supreme Court has not overruled it," which "foreclose[s]" arguing to a district court that *Almendarez-Torres* currently lacks vitality. *United States v. Garcia-Cardenas*, 129 F. App'x 96, 97 (5th Cir. 2005) (citing *Shepard*, 544 U.S. at 27-28 (Thomas, J., concurring in part and concurring in the judgment); *United States v. Rivera*, 265 F.3d 310, 312 (5th Cir. 2001)).[22] If Trial Counsel had made this argument at any stage of the Case, it would have been meritless. Thus, Trial Counsel did not render ineffective assistance by failing to raise this objection, as the "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." *See Clark*, 19 F.3d at 966.

---

[22] *Accord United States v. Rojas-Luna*, 522 F.3d 502, 504-06 (5th Cir. 2008); *United States v. Padilla-Castanon*, 259 F. App'x 635, 635-36 (5th Cir. 2007) (citing *United States v. Pineda-Arrellano*, 492 F.3d 624, 625 (5th Cir.), *cert. denied*, 552 U.S. 1103 (2008)); *United States v. Salgado-Rangel*, 165 F. App'x 355, 356 (5th Cir. 2006) (quoting *United States v. Izaguirre-Flores*, 405 F.3d 270, 277-78 (5th Cir.), *cert. denied*, 546 U.S. 905 (2005)); *United States v. Eusebio-Giron*, 186 F. App'x 507, 508 (5th Cir. 2006) (citing *Rangel-Reyes v. United States*, 547 U.S. 1200 (2006); *United States v. Garza-Lopez*, 410 F.3d 268, 276 (5th Cir.), *cert. denied*, 546 U.S. 919 (2005)); *United States v. Gonzalez-Ribera*, 167 F. App'x 981, 982 (5th Cir. 2006) (quoting *United States v. Mancia-Perez*, 331 F.3d 464, 470 (5th Cir. 2003)); *United States v. Rodriguez-Perez*, 184 F. App'x 451, 454 (5th Cir. 2006); *United States v. Balderas-Alvarado*, 263 F.3d 165 (5th Cir. 2001) (quoting *United States v. Dabeit*, 231 F.3d 979, 984 (5th Cir. 2000)); *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 n.1 (5th Cir. 2001); *United States v. Rodriguez-Montelongo*, 263 F.3d 429, 434-35 (5th Cir. 2001).

Petitioner finally argues in the Reply that the Supreme Court implicitly overruled *Almendarez-Torres* in its recent decision in *Alleyne v. United States*, --- U.S. ----, 133 S.Ct. 2151 (2013), which the Supreme Court decided after Petitioner filed the Motion and after the Fifth Circuit decided the cases cited above. *See* Reply 6-7. This argument also fails because courts in this Circuit have uniformly held that *Almendarez-Torres* remains good law notwithstanding *Alleyne*. *See United States v. Salazar*, --- F. App'x ----, 2013 WL 6571742, at *1 (5th Cir. 2013); *Williams v. Chandler*, Civil Action No. 4:13–CV–708–C, at *2 (N.D. Tex. Jan. 31, 2014); *United States v. Davis*, Criminal Action No. 07–357, 2013 WL 5674134, at *3 n.38 (E.D. La. Oct. 16, 2013).

Thus, for the reasons listed above, Petitioner has failed to establish that Trial Counsel rendered constitutionally ineffective assistance at any stage of the Case.

### 2.     Whether Appellate Counsel rendered ineffective assistance

Having concluded that Trial Counsel did not render ineffective assistance, the Court now considers Petitioner's claims that Appellate Counsel rendered ineffective assistance in several respects. "When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the appellate court] would have afforded relief on appeal.'" *United States v. Reinhart*, 357 F.3d 521, 530 (5th Cir. 2004) (quoting *United States v. Phillips*, 210 F.3d 345, 350 (5th Cir. 2000)). The Court must "counter-factually determine the probable outcome on appeal had counsel raised the argument." *Phillips*, 210 F.3d t 350-351 (quoting *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999)).

a.      **Appellate Counsel's alleged failure to cite Supreme Court precedent regarding the effect of violations of Federal Rule of Criminal Procedure 11**

Petitioner concedes that Appellate Counsel argued on appeal that this Court violated Federal Rule of Criminal Procedure 11 when accepting Petitioner's guilty plea, but claims that Appellate Counsel failed to make this argument effectively. *See* Mot. 45-46. Specifically, Petitioner argues that Appellate Counsel should have cited the Supreme Court's opinion in *McCarthy v. United States*, 394 U.S. 459 (1969), which Petitioner characterizes as mandating an "automatic reversal" in all cases where the district court fails to comply fully with Rule 11. *See* Mot. 46. According to Petitioner,

> [h]ad [Appellate C]ounsel argued that the Supreme Court's decision in *McCarthy* mandates an "automatic reversal" in cases such as [Petitioner]'s, there exists a reasonable probability that the Court of Appeals would have followed the Supreme Court's dictates on this same important matter. Accordingly, [Petitioner] was actually prejudiced as a result of [Appellate C]ounsel's failures to argue more in depth on what is required when a district court fails to comply with Rule 11.

*Id.* (citations omitted).

In *McCarthy*, the Supreme Court considered a criminal case in which the district court "did not personally inquire whether the petitioner understood the nature of the charge" against him before accepting the petitioner's plea. 394 U.S. at 464. The Supreme Court accordingly held that the district court failed to comply with Rule 11. *See id.* at 467-68. The Supreme Court further ruled "that a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11." *Id.* at 463-64.

In 1983, however, Congress abrogated *McCarthy* by amending Rule 11 to provide that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." *See United States v. Johnson*, 1 F.3d 296, 301 (5th Cir. 1993) (quoting Fed. R. Crim. P. 11(h)).

> Concerning *McCarthy's* holding that any violation of Rule 11 created reversible error, the advisory notes accompanying the 1983 amendment asserted that "[t]hough the *McCarthy* per se rule may have been justified at the time and in the circumstances which obtained when the plea in that case was taken, this is no longer the case."

*Id. Accord United States v. Hernandez-Hernandez*, CR. No. C–10–314–2, C.A. No. C–11–75, 2012 WL 502687, at *4 (S.D. Tex. Feb. 13, 2012) (noting that *McCarthy* has been abrogated and citing numerous cases in which the Fifth Circuit deemed a district court's failure to comply fully with Rule 11 to be harmless).

Because *McCarthy* no longer governs the Fifth Circuit, Appellate Counsel did not render ineffective assistance by failing to cite it. *See Reinhart*, 357 F.3d at 530 (quoting *Phillips*, 210 F.3d at 350).

### b. Appellate Counsel's alleged failure to argue that Petitioner did not knowingly and voluntarily agree to the Appeal Waiver

Petitioner argues that Appellate Counsel "should have asserted that: '[Petitioner]'s guilty plea was not knowing and voluntary because the trial court failed to address him personally and advise him of the [A]ppeal [W]aiver.'" Mot. 47. As described above, Petitioner pleaded guilty with full knowledge of the Appeal Waiver's effect, so Appellate Counsel did not render ineffective assistance by failing to argue the contrary to the Fifth Circuit.

### c. Appellate Counsel's failure to appeal the Case to the United States Supreme Court

Petitioner contends that Appellate Counsel "never filed a petition for writ of certiorari" with the United States Supreme Court "despite being advised, not to mention, 'contracted,' to do so." *Id.* at 49. Petitioner further claims that the Case "is a perfect case for the Supreme Court to revisit their [sic] holdings in *Almendarez-Torres.*" *Id.* Petitioner therefore argues that Appellate Counsel "was grossly ineffective for effectively abandoning [him] at such a critical stage of the proceedings" by failing to appeal the Case to the Supreme Court. *Id.*

The Supreme Court has "long held that a lawyer who disregards specific instructions

45

from the defendant to file a notice of appeal acts in a manner that is professionally

unreasonable," which may serve as a basis for an ineffective assistance of counsel claim. *Roe v.*

*Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Peguero v. United States*, 526 U.S. 23, 28

(1999); *Rodriquez v. United States*, 395 U.S. 327 (1969)). This rule, however, applies only to a

petitioner's first appeal to the intermediate court of appeals as of right; it does not apply to an

attorney's alleged failure to follow a petitioner's directions to appeal his or her case to the United

States Supreme Court. *See Beasley v. United States*, No. 2:10CR78–SA, 2013 WL 6632063, at

*7 (N.D. Miss. Dec. 17, 2013) (citing 28 U.S.C. § 1254; *Pennsylvania v. Finley*, 481 U.S. 551,

555 (1987); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Wainwright v. Torna*, 455 U.S. 586, 587

(1982); *Ross v. Moffitt*, 417 U.S. 600, 617-18 (1974); *Clark v. Johnson*, 227 F.3d 273, 283 (5th

Cir. 2000); *United States v. Lauga*, 762 F.2d 1288, 1291 (5th Cir. 1985)). Accordingly, district

courts in the Fifth Circuit have uniformly held that, even where a petitioner has requested that his

or her attorney appeal his or her criminal case to the Supreme Court, that attorney's

> refusal to file a writ of certiorari does not deprive a petitioner of constitutionally
> entitled right [sic], as the constitutional right to effective assistance of counsel
> does not extend beyond a first appeal of right. Because Petitioner does not have a
> constitutional right to counsel for purposes of seeking certiorari review, he cannot
> be deprived of the effective assistance of counsel.

*Id.* (citing 28 U.S.C. § 1254; *Finley*, 481 U.S. at 555; *Evitts*, 469 U.S. at 396; *Wainwright*, 455
U.S. at 587; *Moffitt*, 417 U.S. at 617-18; *Clark v. Johnson*, 227 F.3d at 283; *Lauga*, 762 F.2d at
1291). *Accord Vera v. United States*, No. 2:13–CV–013, 2013 WL 5509193, at *7 (N.D. Tex.
Oct. 4, 2013); *Balderas v. United States*, Civil Action No. 6:11cv414, Crim. No. 6:06cr27, 2012
WL 3544753, at *26 (E.D. Tex. Apr. 23, 2012), *report and recommendation adopted by* 2012
WL 3543491 (E.D. Tex. Aug. 15, 2012); *United States v. Dillon*, Criminal No. 05–314, 2011
WL 1235157, at *17-18 (E.D. La. Mar. 31, 2011) (quoting *Wyatt v. United States*, 574 F.3d 455,
459 (7th Cir. 2009)); *United States v. Pratt*, Criminal Action No. 03–50075, 2010 WL 456772, at
*4 (W.D. La. Feb. 10, 2010); *United States v. Madrigales-Reyes*, Civil Action No. H–09–0428,
Criminal No. H–06–207–02, 2009 WL 2581566, at *7 (S.D. Tex. Aug. 17, 2009); *United States
v. Harvey*, Civil Action No. 05–60–C, 2009 WL 1146998, at *3 (M.D. La. Apr. 28, 2009);
*Valdez v. United States*, 494 F. Supp. 2d 505, 515-16 (W.D. Tex. 2007).

The Court accordingly rejects Petitioner's argument that Appellate Counsel rendered ineffective

assistance by failing to seek a writ of certiorari from the Supreme Court.

Thus, neither Trial Counsel nor Appellate Counsel rendered ineffective assistance in the Case.

### 3.   Petitioner's remaining arguments

The Motion raises several additional arguments that Petitioner claims entitle him to relief. Each of these arguments ultimately fails.

### a.   Cumulative impact arguments

Petitioner has failed to demonstrate that any of his ineffective assistance claims have merit. Petitioner nonetheless "requests that the 'cumulative effect' of multiple deficiencies on the part of" Trial Counsel and Appellate Counsel "be taken into consideration when determining whether or not he is entitled to relief." Mot. 7. Specifically, Petitioner requests that all of his ineffective assistance claims as to each attorney "be considered in the aggregate with respect to the 'prejudice' analysis." *Id*.

Petitioner identifies no case law to support the proposition that courts may apply a "cumulative impact" or "cumulative effect" doctrine to relax the prejudice prong of the *Strickland* test when a petitioner alleges that his or her counsel has rendered ineffective assistance in multiple ways. *See* Mot. 7, 28, 41, 48; Reply 2, 6. To the contrary, the Fifth Circuit's "clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *United States v. Hall*, 455 F.3d 508, 520-21 (5th Cir. 2006) (citing *Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993)). *Accord Shields v. Dretke*, 122 F. App'x 133, 154 (5th Cir. 2005) (citing *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992)). The Court accordingly rejects Petitioner's "cumulative impact" arguments.

### b. Arguments that the Government defaulted by failing to fully respond the Motion

Petitioner claims that the Government, in the Response, did not fully rebut all of the ineffective assistance claims raised in the Motion. *See* Reply 3-5, 7-8. Petitioner therefore argues that the Government has defaulted on these claims, and that the Court should grant these aspects of the Motion as unopposed. *See id.* at 3-5, 7-8.

Assuming without deciding that the Government did not respond fully to every argument in the Motion, Petitioner's argument still fails.[23] Petitioner bears the burden of persuasion to demonstrate his entitlement to relief under § 2255; the Government does not bear the burden to rebut it. *See Barnes v. United States*, 579 F.2d 364, 365 (5th Cir. 1978); *Fleming v. United States*, No. CIV.A.3:97CV0853–G, 1998 WL 740768, at *2 (N.D. Tex. Oct. 19, 1998) (citing *Coon v. United States*, 441 F.2d 279, 280 (5th Cir.), *cert. denied*, 404 U.S. 860 (1971)). *See also Willis*, 273 F.3d at 595 (citing *Frady*, 456 U.S. at 164) (holding that a court is normally "entitled to presume that the defendant stands fairly and finally convicted"). Because Petitioner has failed to meet his burden, the Government's alleged failure to respond is irrelevant.

It is true that, under the Rules Governing Section 2255 Proceedings for the United States

---

[23] The cases Petitioner cites in support of his argument do not stand for the proposition for which Petitioner cites them, and in any event none of them bind this Court. *See* Reply 4, 8. For instance, *United States v. Warren*, 601 F.2d 471, 473-74 (9th Cir. 1979) (cited in Reply 4, 8) addressed a discretionary local rule of the United States District Court of the District of Arizona that provided for the summary dismissal of an indictment. No such local rule exists in the Western District of Texas, and even if it did it would be irrelevant because the local rule in *Warren* has nothing to do with habeas petitions.

*Meade v. Grubbs*, 841 F.2d 1512, 1518 n.3, 1520 n.5 (10th Cir. 1988) (cited in Reply 4), *abrogation recognized by Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013), likewise involved a discretionary local rule of the United States District Court for the Western District of Oklahoma that does not apply to habeas petitions before this Court.

*D G Shelter Prods. Co. v. Forest Prods. Co.*, 769 F.2d 644, 644-45 (10th Cir. 1985) (cited in Reply 8) involved a civil litigant's complete failure to respond to a summary judgment motion. It does not contemplate that default judgment on some or all of a habeas petitioner's claims is proper when the Government files a response to the petition that the petitioner believes is incomplete.

District Courts, the Government, if ordered by the court to respond to a habeas petition, is

required to "address the allegations in the motion." *See* Rules Governing Section 2255

Proceedings for the United States District Courts § 5(b).

> The rules governing § 2255 proceedings, however, do not require the government
> to respond to every separate claim individually (in fact, the government is not
> required to respond at all unless the court orders a response) and a strict
> requirement that the government answer each and every claim separately is not
> only burdensome (where such claims are often not discernible and quite
> numerous) but impractical. Moreover, even assuming that the government has
> failed to address one or more claims asserted by [the petitioner], the court is
> required to determine whether [the petition], on its own, alleges facts that, if true,
> warrant an evidentiary hearing [or other relief].

*United States v. McDaniel*, Nos. 07–20168–22–JWL, 13–2083–JWL, 2013 WL 2449499, at *1
n.2 (D. Kan. June 5, 2013) (citing *Lewis v. United States*, Civil Action No. 1:09cv32, Criminal
Action No. 1:05cr108–1, 2010 WL 3937596, at *15 & n.21 (N.D. W.Va. July 29, 2010)). *Accord
Bramlett v. United States*, Nos. 4:07–CV–90025 (CDL), 4:06–CR–04 (CDL), 2009 WL
1658141, at *5 (M.D. Ga. June 11, 2009) (citations omitted). *See also Sandoval-Ortiz v. United
States*, Nos. EP-08-CA-054-FM, EP-04-CR-2457-FM-3, 2009 WL 3633974, at *1, *6 (W.D.
Tex. Oct. 29, 2009) (denying § 2255 motion even where "[t]he Government did not respond to
[the petitioner's] fourth ground").

Thus, Petitioner is not entitled to relief on those claims that the Government allegedly failed to

fully address in the Response.

### C.    Evidentiary Hearing

Petitioner requests an evidentiary hearing on his ineffective assistance claims. *See* Mot.

49; Reply 4. 28 U.S.C. § 2255(b) provides that

> [u]nless the motion and the files and records of the case conclusively show that
> the prisoner is entitled to no relief, the court shall cause notice thereof to be
> served upon the United States attorney, grant a prompt hearing thereon, determine
> the issues and make findings of fact and conclusions of law with respect thereto.

For the reasons discussed above, the Motion, the Reply, and the files and records of the Case

demonstrate that Petitioner is entitled to no relief, so no evidentiary hearing is necessary to rule

on the Motion. *See Davis v. United States*, Nos. 3:07-CV-1995-P; 3:01-CR-0323-P (03), 2009

49

WL 3488052, at *9 (N.D. Tex. Oct. 28, 2009); *Peralta-Ramirez*, 2008 WL 4630369, at *11. The

Court accordingly denies Petitioner's request for a hearing.

###    D.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, Petitioner must obtain a certificate of appealability before

appealing this Order. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Hallmark v. Johnson*,

118 F.3d 1073, 1076 (5th Cir. 1997). "A certificate of appealability may issue . . . only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). This requires the petitioner to demonstrate "that reasonable jurists could debate

whether . . . the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at

336. "A district court may deny a certificate of appealability, sua sponte, without requiring

further briefing or argument." *Peralta-Ramirez*, 2008 WL 4630369, at *12 (citing *Alexander v.

Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)). For the reasons stated above, jurists of reason

would not debate the merits of any of Petitioner's claims, so the Court sua sponte denies

Petitioner a certificate of appealability. *See id.* (citing *Alexander v. Johnson*, 211 F.3d at 898).

## III.    CONCLUSION

It is therefore **ORDERED** that the Motion, ECF No. 568, EP-09-CR-3143-KC-1, is

hereby **DENIED**.

**IT IS FURTHER ORDERED** that the corresponding civil action, EP-13-CV-201-KC, is

hereby **DISMISSED WITH PREJUDICE**. The Clerk shall close the civil case. The Court shall

issue a final judgment separately.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

50

**SO ORDERED**.

**SIGNED this 23rd day of April, 2014.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE